## DARROUGH v. DAVIS.

No. 18597.    Opinion Filed Dec. 18, 1928.

Rehearing Denied March 5, 1929.

Anglin & Stevenson, for plaintiff in error.

Streeter Speakman, for defendant in error.

HEFNER, J. Jennie Davis, as plaintiff, brought this action against Forrest M. Darrough, as defendant, plaintiff in error herein, for possession and to quiet title to an undivided one-half interest in and to certain lands in Creek county, Okla. The case was tried upon an agreed statement of facts.

Naomi Inman, whose allotment is in controversy in this cause, was a half-blood Creek Indian born February 15, 1906, and was the illegitimate child of Cora Inman, a full-blood Creek Indian. Cora Inman was married to Alven F. Sanders about August 1, 1909, but he was not the father of Naomi Inman. Her father, so far as the record discloses, is unknown. Alven F. Sanders abandoned Cora Inman in 1917 and undertook to remarry without being divorced from her. The parties were, in fact, never divorced. Cora Inman died November 26, 1922, leaving as her next of kin her illegitimate child, Naomi Inman, and Alven F. Sanders, her husband. Thereafter, on July 26, 1924, Naomi Inman, the illegitimate child, died without issue or surviving spouse, and her next of blood kin was Jennie Davis,

her grandmother and the plaintiff in this cause.

On her death Alven F. Sanders, the stepfather, asserted title to an undivided one-half interest in the allotment as the surviving husband and one of the next of kin of Cora Inman, the mother of the illegitimate child. The defendant, Forrest M. Darrough, claims title to that interest by and through a deed from Alven F. Sanders. On these facts the trial court found the issues of law in favor of the plaintiff, the grandmother, and entered its decree finding she was the sole and only next of kin of Cora Inman, as the phrase is used in section 11301, C. O. S. 1921, and was the owner in fee simple of the title in and to the land involved in this case, and canceled the deed under which the defendant claims.

The only question here presented is whether or not the trial judge erred in the interpretation and application of the law applicable to the undisputed facts.

On the death of Naomi Inman, the illegitimate child, who inherited her allotment? The plaintiff in error contends the stepfather and surviving husband of Cora Inman inherited an undivided one-half interest in the allotment, and bases his claim on section 11304, C. O. S. 1921, which is as follows:

"If an illegitimate child, who has not been acknowledged or adopted by his father, dies intestate, without lawful issue, his estate goes to his mother, or in the case of her decease, to her heirs at law."

Naomi Inman was an illegitimate child and had never been acknowledged or adopted by her father. She died intestate without lawful issue, and prior to her death her mother had died, and the mother left surviving her husband, Alva F. Sanders, and her mother, Jennie Davis. It is contended the above section provides a rule of succession in a special case and must govern in every such case, notwithstanding anything to the contrary in general statutes governing succession to estates.

The defendant in error contends that Naomi's grandmother, the plaintiff, inherited all of the allotment of Naomi under subdivision 6 of section 11301, C. O. S. 1921, which is as follows:

"Sixth. If the decedent leave no issue, nor husband or wife, and no father or mother, nor brother, nor sister, the estate must go to the next of kin, in equal degree, excepting that when there are two or more collateral kindred, in equal degree, but claiming through different ancestors, those who claimed through the nearest ancestors must be preferred to those claiming through an ancestor more remote."

It is urged that, since Jennie Davis, the grandmother, was the next of kin of the deceased, she would inherit the property in question, and since Alven F. Sanders, the stepfather, was a stranger to the law of inheritance, either by the common law or the statutes of this state, he could not inherit.

The rights of the plaintiff and the defendant depend upon the construction of the statutes hereinbefore quoted. These statutes have heretofore been construed by this court in the case of Pulliam v. Churchman et al., 108 Okla. 290, 236 Pac. 875. In that case the facts disclosed that Sloan Roberts was an illegitimate and died intestate during 1920, and at the time of his death possessed certain real property. During his lifetime he married Stella Roberts, who survived him. The property involved was the original allotment of the deceased. He left surviving him his wife, but no issue, no father, no mother, no brother nor sister. It was agreed that the heirs or next of kin of his mother were Lizzie Churchman and others. The wife claimed the entire estate, and the heirs of his mother also claimed the same because the deceased was an illegitimate. In the county court it was decreed that the heirs of the mother should prevail to the exclusion of the wife. The wife claimed all of the estate by virtue of subdivision 5 of section 11301, C. O. S. 1921, which provides that if the decedent leave a surviving husband or wife, and no issue, and no father, nor mother, nor brothers, nor sister, the whole estate goes to the surviving husband or wife. The heirs of the mother claimed under section 11304, supra. On these facts this court held that the surviving wife took the entire estate to the exclusion of the heirs of the deceased mother of the illegitimate. Mr. Justice Lester, speaking for the court, said:

"The object of the statute in depriving the father, or his heirs, from participating in the estate of his illegitimate offspring is on account of the uncertainty of the father's identity and his moral delinquency, and is a just and correct principle of the law, but the force of the rule cannot be held to apply to the husband or wife who has not participated in any moral wrong or social neglect of such illegitimate. An illegitimate is as capable of contracting marriage and of assuming its social and contractual obligations as any other citizen. As we view the statute, it undertakes to deprive only the putative father and his heirs at law from

sharing the estate of an illegitimate, in case such father has not given legal recognition to his offspring, and is not intended to deprive others who are otherwise legally entitled to the same."

Under the rule announced in the above case, section 11304, supra, must be limited and construed in connection with the general statutes on inheritance. It was the intention of the Legislature to punish for moral delinquency the father of the illegitimate child and the heirs of such father, and was not the intention to deprive others from taking the estate who would otherwise inherit under the general statutes of descent and distribution.

Under the facts in the case at bar and under the rule announced in the Sloan Case, section 11304, supra, is not applicable. The devolution of the estate is controlled by subdivision 6 of section 11301, supra. Since the grandmother is the next of kin and is the heir under subdivision 6, on the death of the illegitimate child, she inherited the entire estate to the exclusion of the stepfather.

There is another reason why the stepfather cannot recover in this case and that is on the ground of estoppel. About five years before Cora Inman died, Alven F. Sanders abandoned her, went to the state of Louisiana and, without a divorce having been granted, married Maude Blount, with whom he thereafter lived as his wife. Of this marriage two children were born and are now being reared by the parents. After Cora Inman died, he announced he had never been divorced from her and was her surviving husband and as such was entitled to inherit an undivided one-half interest in the allotment of the deceased illegitimate child of Cora Inman. He had gone all these years without speaking of the fact that he was the husband of Cora Inman. He again married, was rearing a family, and still kept his mouth closed. When Cora died and he saw an opportunity to claim as her heir, he then for the first time spoke. The theory of estoppel is, if you don't speak when you ought to speak, you shall not speak when you want to speak.

In the case of James v. James, 131 Okla. 276, 268 Pac. 726, this court said:

"For the purpose of acquiring a bit of the property of Roy James, which he in no manner helped to acquire, plaintiff in error is willing and seeks to make his deceased wife a bigamist from the time of his marriage to her to the time of the death of Roy James and make of himself an adulterer during such time, and after having indulged himself thus for a period of 5½ years, upon the death of Roy James, assert himself the common-law husband of the woman he now seeks, after her death, to brand as a subject fit only to have been a social outcast, thereby depicting a most unusual mental contortion and producing a condition having support neither in equity, good morals, settled law, nor sound logic."

The above statement is applicable to the facts in this case. Before Alven F. Sanders could claim an interest in the property in question, it was essential for him to establish that he was never divorced from Cora Inman and that all of the relations with respect to the second marriage were void and illegal. This would produce a condition that has support neither in equity, good morals, settled law, nor public policy. The marriage relation involves the question of public policy, and the state is a deeply interested party in all such relations. On the ground of public policy, Alven F. Sanders should be estopped to deny his marriage relation with Maude Blount and should not be permitted to claim as an heir of Cora Inman.

The judgment of the trial court is affirmed.

BRANSON. C. J., MASON, V. C. J., and HARRISON, PHELPS, LESTER, and HUNT, JJ., concur.

Note.—See "Bastards," 7 C. J. §54, p. 965. n. 41. "Descent and Distribution," 18 C. J. §98, p. 856, n. 82.